**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Shelby Pierson, | ) | CV11-1004-PHX-JAT |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| State Farm Mutual Automobile Insurance Company, | ) ) ) | |
| Defendant. | ) ) ) | |
| | ) | |

Pending before the Court is Defendant's Motion for Partial Summary Judgment. (Doc. 29). The Court now rules on the Motion.[1]

## I.   BACKGROUND

Defendant filed a Motion for Partial Summary Judgment on April 20, 2010. (Doc. 29). Along with its Motion, Defendant filed a separate Statement of Facts in Support. (Doc. 30). Plaintiff has not filed a response to the Motion. The Court therefore accepts Defendant's undisputed facts as true. L.R.Civ.P. 56.1(b).

---

[1]Though oral argument was requested on the Motion, because the party requesting oral argument submitted memoranda discussing the law and evidence in support of its position and oral argument would not have aided the Court's decisional process, the Court will not set oral argument. *See e.g., Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Investors Group, Inc. v. Pacific. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

On December 31, 2008, Plaintiff Shelby Pierson was involved in an automobile accident. (Defendant's Statement of Facts, "DSOF," ¶ 2). The other driver involved, Carlos Torres, was driving under the influence. (DSOF ¶ 2). Plaintiff was insured through her mother's insurance policy with Defendant State Farm. (DSOF ¶ 1). The policy had an underinsured motorist ("UIM") coverage limit of $50,000 per person and a medical payments coverage limit of $5,000 per person. (DSOF ¶ 1).

On January 2, 2009, Plaintiff's mother advised Defendant that Plaintiff had been taken by ambulance to the hospital after the accident, and had bruising and soft tissue injuries as a result of the accident. (DSOF ¶ 3). In mid-January, Plaintiff's attorney informed Defendant that Plaintiff might be pursuing a claim for UIM benefits. (DSOF ¶ 4). Infinity Insurance ("Infinity") informed Defendant that it would accept liability for the accident, to the extent of its $15,000 policy limit, and that it did not anticipate Plaintiff requiring UIM benefits. (DSOF ¶ 5).

In June 2010, Plaintiff demanded her UIM policy limits. (DSOF ¶ 6). The demand based Plantiff's claim for the full $50,000 limit on: allegations that Plaintiff had enrolled for massage treatments and gym memberships on the advice of her doctor; allegations that Plaintiff had been forced to give up one job, and reduce her work hours at her second job; allegations that Plaintiff's back problems might prevent her from becoming a paramedic; and allegations that Plaintiff was entitled to punitive damages because Mr. Torres was driving under the influence. (DSOF ¶ 6). Plaintiff included her medical records in the demand, but not employment records, records related to her gym membership and massage, or chiropractic treatment records. (DSOF ¶ 7). Plaintiff's medical bills totaled $13,014.21. (DSOF ¶ 8).

On July 2, 2010, Defendant paid Plaintiff $5,000, the limit under the policy for medical payments. (DSOF ¶ 9). Plaintiff provided Defendant with her chiropractic records and settlement information with Infinity on September 3, 2010. (DSOF ¶ 10). On September 10, 2010, Defendant's claim representative valued Plaintiff's UIM claim at between $13,000 to $15,000. (DSOF ¶ 11). The evaluation noted the medical problems that Plaintiff attributed

to the accident, that the chiropractic charges seemed high, and that Plaintiff had not provided documentation regarding her wage loss, gym membership, or massage treatment. (DSOF ¶ 11). Defendant subsequently offered Plaintiff $10,000 to settle the claim, with a maximum offer of $13,000. (DSOF ¶ 13). Plaintiff refused and advised that her demand for $50,000 was firm. (DSOF ¶ 13).

Plaintiff filed a complaint in state court on October 21, 2010. (Doc. 1-2 at 2-7). Defendant issued Plaintiff a $10,000 payment for her UIM claim on January 6, 2011. (DSOF ¶ 15). Plaintiff filed her Second Amended Complaint, which included a claim of bad faith, on May 5, 2011. (Doc. 1-1). Defendant then removed the case to this Court on May 20, 2011. (Doc. 1).

Dr. Bair conducted an independent medical examination of Plaintiff on November 28, 2011 and concluded that Plaintiff had suffered injuries in the accident that would resolve independent of further treatment. (DSOF ¶ 23). Dr. Bair determined that Plaintiff's condition needed no further diagnosis or treatment and that Plaintiff had no work or recreational restrictions. (DSOF ¶ 23).

## II.  LEGAL STANDARD

### A.  SUMMARY JUDGMENT

Plaintiff filed no response to Defendant's Motion. This Court's Local Rules permit it to consider a party's failure to oppose a motion as "a consent to the . . . granting of the motion." LRCiv 7.2(i). A court cannot, however, grant a summary judgment motion merely because it is unopposed, even where its local rules might permit it. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 949-50 (9th Cir. 1993). Even without an opposition, the Court must apply standards consistent with Federal Rule of Civil Procedure 56, determining if the moving party's motion demonstrates that there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Id.* at 950.

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

1   (1986). Summary judgment is appropriate when "the movant shows that there is no genuine

2   dispute as to any material fact and the movant is entitled to judgment as a matter of law."

3   Fed. R. Civ. P. 56(a). A party seeking summary judgment "bears the initial responsibility of

4   informing the district court of the basis for its motion, and identifying those portions of [the

5   record] which it believes demonstrate the absence of a genuine issue of material fact."

6   *Celotex*, 477 U.S. at 323 (1986).

7        If the moving party meets its initial responsibility, the burden then shifts to the

8   opposing party who must demonstrate the existence of a factual dispute and that the fact in

9   contention is material, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

10   the dispute is genuine. *Id.* at 250; see *Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216,

11   1221 (9th Cir. 1995). "If the opposing party does not so respond, summary judgment should,

12   if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2). The Court is not

13   required to scour the entire record for evidence establishing a genuine issue of fact or obtain

14   the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028–29 (9th

15   Cir. 2001).

16                 **B.**   **BAD FAITH**

17        "An insurer acts in bad faith when it unreasonably investigates, evaluates, or processes

18   a claim (an 'objective' test), and either knows it is acting unreasonably or acts with such

19   reckless disregard that such knowledge may be imputed to it (a 'subjective' test)." *Nardelli*

20   *v. Metro. Group Prop. & Cas. Ins. Co.*, 634 Ariz. Adv. Rep. 11, *3 (Ariz. Ct. App. 2012)

21   (citing *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000)). An insurer

22   cannot be liable for acting in bad faith for denying a fairly debatable claim. *Lasma Corp. v.*

23   *Monarch Ins. Co. of Ohio*, 764 P.2d 1118, 1122 (Ariz. 1988). If there is a question of fact as

24   to whether the insurance company owed benefits under the policy, then the claim is fairly

25   debatable. *Knoell v. Metro. Life Ins. Co.*, 163 F. Supp. 2d 1072, 1075 (D. Ariz. 2001). An

26   insurance company's belief that a claim is fairly debatable is a question of fact to be

27   determined by the jury. *Zilisch*, 995 P.2d at 279. Because the subjective prong of bad faith

28   must be left to the jury, Defendant must demonstrate that there is no disputed issue of fact

that Defendant's conduct was objectively reasonable. "If the plaintiff offers no significantly probative evidence that calls into question the defendant's belief in fair debatability . . . the court may rule on the issue as matter of law." *Young v. Allstate Ins. Co.*, 296 F. Supp. 2d 1111, 1116 (D. Ariz. 2003).

Even if as a result of a claim being fairly debatable Defendant is not liable for failing to pay the full claim, Defendant might still be liable for bad faith if the way Defendant processed the claim was unreasonable. *Zilisch*, 995 P.2d at 280. In this additional inquiry on bad faith, the Court considers whether the Defendant acted reasonably in conducting the investigation, evaluation, and processing of the claim and whether the insurer knew or was conscious of the fact that its conduct was unreasonable. *Id.* The Court can only consider the objective prong because the insurance company's belief is a question of fact for the jury. In considering whether Defendant acted reasonably in processing even a fairly debatable claim, the Court considers whether Defendant immediately conducted an adequate investigation, whether Defendant acted reasonably in evaluating the claim, and whether the Defendant acted promptly in paying a legitimate claim. *Id.*

### III.   ANALYSIS

#### A.   BAD FAITH

Plaintiff alleges that Defendant acted in bad faith by: (1) "intentionally denying or failing to process or failing to promptly negotiate and settle [P]laintiff's claim without a reasonable basis for such conduct;" (2) "intentionally refusing to respond to or communicate with the [P]laintiff;" and (3) "unreasonably withholding payment and forcing [P]laintiff to proceed with her lawsuit over her claim." (Doc. 1 at 4). Plaintiff does not make specific allegations as to how Defendant should have acted, or provide any evidence in support of these allegations.

The Court finds that Plaintiff's claim was fairly debatable. Here, coverage was undisputed and only the amount of damages was in question. Plaintiff has offered no evidence calling into question Defendant's belief in the debatability of the claim. *Young*, 296 F. Supp. 2d. at 1116. Moreover, there are several indications that the amount Plaintiff was

entitled to was debatable. First, Infinity indicated that it believed no further payment beyond its initial $15,000 payment would be required. (DSOF ¶ 5). It based that view on Plaintiff having reported only soft tissue injuries. *Id.* Second, Defendant's employees differed on the amount. Its claim representative valued the claim with a range between $13,000 to $15,000. (DSOF ¶ 11). Defendant's team manager believed the "very top value" of Plaintiff's claim was $13,000. (D. Ex. 12). Third, Defendant was never provided with evidence of ongoing expenses for the gym membership or massage treatments. Fourth, Plaintiff was offered an amount exceeding her medical expenses. Defendant's offer thus included compensation for pain and suffering, an amount that is inherently flexible. *See Voland v. Farmers Ins. Co. of Arizona*, 943 P.2d 808, 812-13 (Ariz. Ct. App. 1997). For these reasons, Defendant's denial of Plaintiff's full claim was fairly debatable, and thus objectively reasonable.

The Court also finds that Defendant's processing of Plaintiff's claim was reasonable. Defendant did not unduly delay the investigation, processing, or payment of Plaintiff's claim. Between the time of the accident and April 21, 2009, Infinity was determining whether it would cover any part of the damages incurred by Plaintiff. (DSOF ¶ 2-5). Defendant was then informed by Infinity that no further payment would likely be required.  (DSOF ¶ 5). Defendant was not informed until June 16, 2010, that Plaintiff was seeking UIM benefits. (DSOF ¶ 6). Defendant did not receive requested records regarding this claim from Plaintiff until September 3, 2010. (DSOF ¶ 10). Defendant was thus not in a position to evaluate Plaintiff's claim until September 3, 2010. An evaluation was completed by September 10, 2010, and an offer of settlement made September 13, 2010. (DSOF ¶ 11-13). Thus, there was no undue delay in Defendant's investigation of Plaintiff's claim. Nor was Defendant unreasonable in the settlement process; after it made its offer to Plaintiff, Plaintiff advised that her claim for $50,000 was firm, and made no attempt to negotiate. (DSOF ¶ 13). Finally, Defendant made a payment for $10,000 on January 6, 2011. (DSOF ¶ 15). The payment was timely given the disputed nature of Plaintiff's claim and the already protracted claim process. Accordingly, Defendant acted reasonably in processing Plaintiff's claim.

Because Plaintiff's claim was fairly debatable and Defendant's processing of that

1  claim was not unreasonable, Defendant is not liable for acting in bad faith.

2  **B. PUNITIVE DAMAGES**

3  Plaintiff cannot recover punitive damages based on Mr. Torres being under the

4  influence at the time of the accident. *See State Farm Mut. Auto. Ins. Co. v. Wilson*, 782 P.2d

5  727, 736 (Ariz. 1989) ("UIM and uninsured insurers are not liable to pay [punitive] damages

6  unless they have specifically provided to do so"). Because Plaintiff's bad faith claim has been

7  disposed of, summary judgment for Defendant on the issue of punitive damages is thus also

8  appropriate.[2]

9  **IV.   MOTION TO ADJUDICATE**

10  Because the Court is now issuing an Order on Defendant's Motion for Summary

11  Judgment, Defendant's Motion to Adjudicate (Doc. 31) is denied as moot.

12  **V.   CONCLUSION**

13  Accordingly,

14  **IT IS ORDERED** granting Defendant's Motion for Partial Summary Judgment (Doc.

15  29). The Court grants summary judgment to Defendant on the bad faith and punitive damages

16  claims contained in Count Two of Plaintiff's Complaint.

17  **IT IS FURTHER ORDERED** denying Defendant's Motion to Adjudicate

18  Defendant's Motion for Summary Judgment (Doc. 31) as moot.

19  DATED this 16th day of July, 2012.

20

21

22  _____
    James A. Teilborg
23  United States District Judge

24

25

26

---

27  [2] Punitive damages are inappropriate in breach of contract actions absent the assertion

28  of an additional tort claim. *Rhue v. Dawson*, 841 P.2d 215, 227 (Ariz. Ct. App. 1992).